[No. 4401.]

## JABEZ M. BALDWIN v. WESLEY MORGAN.

CONTRACT TO CONVEY LAND.—A contract by which the Western Pacific Rail-road Company sells a quarter section of the land, granted by Congress to the Central Pacific Company to aid in the construction of a railroad, and agrees to execute to the purchaser a deed when the company re-ceives a patent, vests in the purchaser a perfect equity with an absolute right to a conveyance as soon as the company receives the patent.

COLLATERAL ATTACK ON JUDGMENT.—If B., sued in the complaint by the fictitious name of John Doe, is served with summons, and judgment is rendered against him, without inserting his name in the complaint, it amounts to an irregularity for which the judgment will be reversed on appeal, but the judgment is not void, and cannot be attacked col-laterally.

APPEAL from the District Court, Fifteenth Judicial Dis-trict, County of Contra Costa.

The Western Pacific Railroad Company, the successor in interest of the Central Pacific Railroad Company of Cali-fornia, on the 4th day of June, 1867, entered into a con-tract with Joseph P. McCabe, in which it was recited that the company had sold him the northeast quarter of section twenty-seven, township one north, range three east, Mount Diablo base and meridian, for the sum of four hundred dol-

lars, and that it would execute to him a deed in fee simple within thirty days after it received a patent for the land from the United States. McCabe entered into possession of the land, and on the 15th day of February, 1868, sold and conveyed the land by a quitclaim deed to Joseph Sparling for the sum of eight hundred dollars, and Sparling entered into possession. On the 13th day of April, 1870, Sparling mortgaged the land to Wesley Morgan, to secure the payment of fifteen hundred dollars. On the 8th day of November, 1870, Sparling sold and conveyed the land to Charles Clayton and Joseph W. Jordan. On the 12th of October, 1871, Clayton and Jordan sold and conveyed to Jabez M. Baldwin. On the 23d of October, 1871, Morgan commenced an action to enforce the lien of his mortgage. On the 3d of April, 1870, a patent for the land was issued to the Central Pacific Railroad Company, the successor in interest of the Western Pacific Railroad Company. On the 15th of May, 1872, the land was sold under a decree rendered in the foreclosure case, and Morgan became the purchaser. It was in this foreclosure suit that Baldwin was sued as John Doe. He did not appear in the action. On the 30th day of May, 1872, the Central Pacific Railroad Company conveyed the land to Clayton and Jordan, they having procured an assignment of the contract. On the 26th of August, 1872, Clayton and Jordan again conveyed to Baldwin. On the 28th of September, 1872, Baldwin, who was in possession, commenced this action to quiet his title. The defendant obtained a sheriff's deed after the commencement of the action, and set it up in a supplemental answer. The plaintiff recovered judgment, and the defendant appealed.

The other facts are stated in the opinion.

*Thomas A. Brown and L. B. Mizner*, for the Appellant.

The acts of Congress granting to the railroads the land in question were congressional grants, and passed the title or an interest in the land at the time; they were grants *in præsenti;* the language of the acts is, "there is hereby granted," etc.

The acts vested in the railroad company a present inter-

est in the land; the act provides that as the work progressed patents should be issued. The patent which afterwards issued perfected the title. The land had been granted to the company by law, for certain purposes, and the patent was issued by authority of and in pursuance of the law making the grant. The railroad company sold the land to McCabe, June 4, 1867, and received the full purchase-price therefor, and contracted to convey it to him or his assigns when it received the patent. This sale and contract was recorded February, 1868.

The sale made the railroad company the trustee of McCabe and his assigns of the estate sold, and when the company received the patent they held it in trust for McCabe and his assigns. (1 Sugden on Vendors, 191; 1 Story's Equity Jur., Sec. 789, 790; *Champon* v. *Brown,* 6 Johns. Ch. R. 398: *Bludworth* v. *Lake,* 33 Cal. 256.)

After the railroad company received the patent it held the title in trust for McCabe and his assigns, and the defendant Morgan had the right to call on the company to convey the legal title to him as the assignee of McCabe, through Sparling. (*Bludworth* v. *Lake,* 33 Cal. 256; *Lathrop* v. *Bampton,* 31 Cal. 17; 1 Story's Eq. Jur., Sec. 790.) Baldwin cannot attack the judgment of foreclosure in this collateral action. (*Drake* v. *Duvenick,* 45 Cal. 455.)

*R. A. Redman,* for the Respondent.

The contract of the railroad company with McCabe was not a deed, and as McCabe conveyed to Sparling by a quit-claim deed, neither he nor his assigns were precluded from acquiring title afterwards. (*McDonald* v. *Edwards,* 44 Cal. 328; *Quivey* v. *Baker,* 37 Cal. 465.) The service was void, Baldwin not being named in the complaint or summons. *Lyman* v. *Milton,* 44 Cal. 631.) The entry of default by the clerk was void for the same reasons. (See *Stearns* v. *Aguire,* Cal. 443; Freeman on Judgments, Sec. 129.)

By the COURT:

The contract of sale executed to McCabe by the Western Pacific Railroad Company, under which McCabe entered

into possession, vested in him a perfect equity to the premises therein described, and an absolute right to a conveyance in fee, so soon as the company should obtain a patent from the government of the United States. By successive conveyances this equity passed to Sparling, and (subject to the lien of the mortgage delivered by the latter to the defendant Morgan), to Jordan & Clayton, and finally came to Jabez M. Baldwin, the plaintiff in this action. The question upon which the case turns is, whether Baldwin is to be considered to have been a party to the decree of foreclosure subsequently entered upon the mortgage delivered by Sparling to Morgan.

The summons in the action by which that mortgage was foreclosed was personally served upon Baldwin. The return of the sheriff indorsed upon the summons was that he had served Baldwin—"personally served the same (the summons) on the 10th day of November, 1871, on Jabez M. Baldwin, named in the within summons 'John Doe,' by delivery to him, said defendant, personally," etc. Had Baldwin been named in the complaint as a defendant in the first instance, or had his name, after service of the summons, been inserted in the complaint by leave of the court, the proceedings would have been regular in all respects. But this was not done. It is true that the decree of foreclosure as entered recited that Baldwin had been duly served with the summons and complaint in the cause, and had, by the order of the court, been duly substituted as a defendant therein "in the place and stead of John Doe, a fictitious name." But no order appears to have been actually entered, nor does a copy thereof appear upon the judgment-roll. The omission in this respect undoubtedly amounted to an irregularity, and one for which the decree would have been reversed here had a timely appeal been taken. (*McKinlay* v. *Tuttle,* 42 Cal. 570.) The inquiry here, however, as to the validity of the decree, is not direct, as upon appeal, but collateral merely. The true inquiry, therefore, is not as to whether jurisdiction has been irregularly exercised, but is limited to the question whether it was obtained at all. The personal service of the summons upon Baldwin certainly vested the

court with jurisdiction over him, and however irregular its subsequent exercise, the validity of the decree rendered is not now open to inquiry. We so held in *Campbell* v. *Adams*, ante, p. 203,—a case not distinguishable from this case in principle,—and the views then expressed are decisive of this case.

Judgment and order denying a new trial reversed and cause remanded for a new trial.